## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MISSOURI

| | |
|---|---|
| STEPHEN ROSSI, individually and on behalf of all others similarly situated, | Case No. |
| Plaintiff, | CLASS ACTION COMPLAINT |
| v. | <u>JURY DEMAND</u> |
| TRIZETTO PROVIDER SOLUTIONS LLC AND BLUE CROSS & BLUE SHIELD OF RHODE ISLAND, | |
| Defendants. | |

Stephen Rossi ("Plaintiff"), through his attorneys, individually and on behalf of all others similarly situated, brings this Class Action Complaint against Defendants Blue Cross & Blue Shield of Rhode Island ("BCBS"), TriZetto Provider Solutions LLC ("TriZetto"), and their present, former, or future direct and indirect parent companies, subsidiaries, affiliates, agents, and/or other related entities. Plaintiff alleges the following on information and belief—except as to his own actions, counsel's investigations, and facts of public record.

### **INTRODUCTION**

1. This class action arises from Defendants' failure to protect highly sensitive data.

2. Defendant TriZetto is a provider of revenue management services to physicians, hospitals, and health systems, based in Earth City, Missouri.[1]

---

[1] *The TriZetto Provider Solutions Story*, TRIZETTO PROVIDER SOLUTIONS, https://www.trizettoprovider.com/who-we-are/our-story (last visited Dec. 18, 2025); *TriZetto Provider Solutions Notifies Healthcare Provider Clients About Data Breach,* THE HIPAA JOURNAL, https://www.hipaajournal.com/trizetto-provider-solutions-data-breach/ (last visited Dec. 18, 2025).

3.     Defendant Blue Cross & Blue Shield of Rhode Island is a nonprofit health insurer helping all Rhode Islanders live their healthiest lives, based in Providence, Rhode Island.[2] On information and belief, Defendant Blue Cross & Blue Shield of Rhode Island is an enterprise client of TriZetto.

4.     As such, TriZetto stores a litany of highly sensitive personal identifiable information ("PII") and protected health information ("PHI")—together "PII/PHI"—about its current and former employees and/or consumers of Defendant BCBS.

5.     But such PII/PHI was inadequately protected and thus exposed to cybercriminals in a data breach (the "Data Breach").

6.     It is unknown for precisely how long the cybercriminals had access to Defendants' network before the breach was discovered. In other words, Defendants had no effective means to prevent, detect, stop, or mitigate breaches of its systems—thereby allowing cybercriminals unrestricted access to its consumers' PII/PHI.

7.     On information and belief, cybercriminals were able to breach Defendants' systems because Defendant failed to adequately train their employees on cybersecurity and failed to maintain reasonable security safeguards or protocols to protect the Class's PII/PHI. In short, Defendants' failures placed the Class's PII/PHI in a vulnerable position—rendering them easy targets for cybercriminals.

8.     Plaintiff is a Data Breach victim, having received a breach notice. He brings this class action on behalf of himself, and all others harmed by Defendants' misconduct.

---

[2] About Us, BLUE CROSS & BLUE SHIELD OF RHODE ISLAND, https://www.trizettoprovider.com/who-we-are/our-story (last visited Dec. 18, 2025)

9.      The exposure of one's PII/PHI to cybercriminals is a bell that cannot be unrung. Before this Data Breach, their consumers' private information was exactly that—private. Not anymore. Now, their private information is forever exposed and unsecure.

## JURISDICTION AND VENUE

10.      Jurisdiction is proper in this Court under 28 U.S.C. §1332 (diversity jurisdiction). Specifically, this Court has subject matter and diversity jurisdiction over this action under 28 U.S.C. § 1332(d) because this is a class action where the amount in controversy exceeds the sum or value of $5 million, exclusive of interest and costs, there are more than 100 members in the proposed class, and at least one class member is a citizen of a state different from Defendant.

11.      Supplemental jurisdiction to adjudicate issues pertaining to state law is proper in this Court under 28 U.S.C. §1367.

12.      This Court has personal jurisdiction over Defendants because Defendant TriZetto is headquartered in Missouri, regularly conducts business in Missouri, and has sufficient minimum contacts in Missouri. Moreover, Defendant BCBS has sufficient contacts with Missouri through its business operations and contacts with TriZetto— including whereby Defendant BCBS sent the PII of Plaintiff and Class Members to TriZetto in Missouri.

13.      Venue is proper in this Court because Defendant TriZetto's principal office is in this District, and because a substantial part of the events, acts, and omissions giving rise to Plaintiff's claims occurred in this District. Moreover, Defendant BCBS has sufficient contacts with Missouri through its business operations and contacts with TriZetto—including whereby Defendant BCBS sent the PII of Plaintiff and Class Members to TriZetto which has its principal office in this District.

3

**THE PARTIES**

14.    Plaintiff, Stephen Rossi is a natural person and a citizen of North Providence, Rhode Island. He is domiciled in Rhode Island, where he intends to remain.

15.    Defendant, TriZetto Provider Solutions LLC, is a foreign limited liability company incorporated in Delaware and with its principal place of business at 221 Bolivar St., Jefferson City, Missouri, 65101.

16.    Defendant The BCBS is a nonprofit healthcare system incorporated with its principal place of business at 500 Exchange St, Providence, RI 02903.

**CLASS ACTION ALLEGATIONS**

17.    Plaintiff brings this action pursuant to the provisions of Rules 23(a), (b)(2), and (b)(3) of the Federal Rules of Civil Procedure, on behalf of themself and the following Class:

> All individuals within the United States of America whose PII/PHI was compromised in the Data Breach discovered by TriZetto in December 2025, including all those individuals who received notice of the breach.

18.    Excluded from the Class are the following individuals and/or entities: Defendants and Defendants' parents, subsidiaries, affiliates, officers and directors, and any entity in which Defendants have a controlling interest; all individuals who make a timely election to be excluded from this proceeding using the correct protocol for opting out; any and all federal, state or local governments, including but not limited to its departments, agencies, divisions, bureaus, boards, sections, groups, counsels and/or subdivisions; and all judges assigned to hear any aspect of this litigation, as well as its immediate family members.

19.    Plaintiff reserves the right to amend the above definitions or to propose subclasses in subsequent pleadings and motions for class certification.

4

20.     This action has been brought and may properly be maintained as a class action under Federal Rule of Civil Procedure Rule 23 because there is a well-defined community of interest in the litigation, and membership in the proposed classes is easily ascertainable.

21.     <u>Numerosity</u>: A class action is the only available method for the fair and efficient adjudication of this controversy, as the members of the Class are so numerous that joinder of all members is impractical, if not impossible.

22.     <u>Commonality</u>: Plaintiff and the Class Members share a community of interests in that there are numerous common questions and issues of fact and law which predominate over any questions and issues solely affecting individual members, including, but not necessarily limited to:

a.     Whether Defendants had a legal duty to Plaintiff and the Class to exercise due care in collecting, storing, using, and/or safeguarding their PHI/PII and financial information;

b.     Whether Defendants knew or should have known of the susceptibility of its data security systems to a data breach;

c.     Whether Defendants' security procedures and practices to protect its systems were reasonable in light of the measures recommended by data security experts;

d.     Whether Defendants' failure to implement adequate data security measures allowed the Data Breach to occur;

e.     Whether Defendants failed to comply with its own policies and applicable laws, regulations, and industry standards relating to data security;

5

f.     Whether Defendants adequately, promptly, and accurately informed Plaintiff and Class Members that their PHI/PII and financial information had been compromised;

g.     How and when Defendants actually learned of the Data Breach;

h.     Whether Defendants' conduct, including its failure to act, resulted in or was the proximate cause of the breach of its systems, resulting in the loss of the PHI/PII and financial information of Plaintiff and Class Members;

i.     Whether Defendants adequately addressed and fixed the vulnerabilities which permitted the Data Breach to occur;

j.     Whether Defendants engaged in unfair, unlawful, or deceptive practices by failing to safeguard the PHI/PII and financial information of Plaintiff and Class Members;

k.     Whether Plaintiff and Class Members are entitled to actual and/or statutory damages and/or whether injunctive, corrective and/or declaratory relief and/or accounting is/are appropriate as a result of Defendants' wrongful conduct; and

l.     Whether Plaintiff and Class Members are entitled to restitution as a result of Defendants' wrongful conduct.

23.    <u>Typicality</u>: Plaintiff's claims are typical of the claims of the Class. Plaintiff and all members of the Class sustained damages arising out of and caused by Defendants' common course of conduct in violation of law, as alleged herein.

24.    <u>Adequacy of Representation:</u> Plaintiff in this class action is an adequate representative of the Class in that the Plaintiff has the same interest in the litigation of this case

6

as the Class Members, is committed to the vigorous prosecution of this case and has retained competent counsel who are experienced in conducting litigation of this nature.

25.     Plaintiff is not subject to any individual defenses unique from those conceivably applicable to other Class Members or the class in its entirety. Plaintiff anticipates no management difficulties in this litigation.

26.     <u>Superiority of Class Action</u>: Since the damages suffered by individual Class Members, while not inconsequential, may be relatively small, the expense and burden of individual litigation by each member make or may make it impractical for members of the Class to seek redress individually for the wrongful conduct alleged herein. Should separate actions be brought or be required to be brought, by each individual member of the Class, the resulting multiplicity of lawsuits would cause undue hardship and expense for the Court and the litigants.

27.     The prosecution of separate actions would also create a risk of inconsistent rulings, which might be dispositive of the interests of the Class Members who are not parties to the adjudications and/or may substantially impede their ability to protect their interests adequately.

28.     This class action is also appropriate for certification because Defendants have acted or refused to act on grounds generally applicable to Class Members, thereby requiring the Court's imposition of uniform relief to ensure compatible standards of conduct toward the Class Members and making final injunctive relief appropriate with respect to the Class in its entirety.

29.     Defendants' policies and practices challenged herein apply to and affect Class Members uniformly and Plaintiff's challenge of these policies and practices hinges on

Defendants' conduct with respect to the Class in its entirety, not on facts or law applicable only to Plaintiff.

30.     Unless a Class-wide injunction is issued, Defendants may continue failing to properly secure the PHI/PII and financial information of Class Members, and Defendants may continue to act unlawfully as set forth in this Complaint.

31.     Further, Defendants have acted or refused to act on grounds generally applicable to the Class and, accordingly, final injunctive or corresponding declaratory relief with regard to the Class Members as a whole is appropriate under Rule 23(b)(2) of the Federal Rules of Civil Procedure.

## COMMON FACTUAL ALLEGATIONS

### Defendants' Failed Response to the Breach

32.     On October 2, 2025, Defendant TriZetto was hacked in the Data Breach—which comprised the data of its enterprise consumers.[3]

33.     Worryingly, Defendant TriZetto already admitted that:

  a.     "Suspicious activity was identified within a web portal used by some of its healthcare provider customers to access TriZetto systems,"[4]

  b.     "While the cybersecurity incident was only recently detected, the unauthorized access has been ongoing for a considerable period of time."[5]

  c.     "The forensic investigation determined that an unauthorized third party

---

[3] *TriZetto Provider Solutions Notifies Healthcare Provider Clients About Data Breach*, THE HIPAA JOURNAL, https://www.hipaajournal.com/trizetto-provider-solutions-data-breach/ (last visited Dec. 18, 2025).
[4] *Id*.
[5] *Id*.

first started accessing historical eligibility transaction reports within the TriZetto system in November 2024, almost a year before the unauthorized access was detected."[6]

    d.    "The reports within its storage system contained the protected health information of patients of certain healthcare provider clients."[7]

34.    Because of Defendants' Data Breach, at least the following types of PII/PHI were compromised:

    a.    Name of individual;

    b.    Address;

    c.    Date of birth;

    d.    Social Security Number Information;

    e.    Medical Information; and

    f.    Health Insurance Information

35.    Currently, the precise number of persons injured is unclear. But upon information and belief, the size of the putative Class can be ascertained from information in Defendants' custody and control. And upon information and belief, the putative Class includes thousands of members—as it includes its employees/consumers.

36.    And yet, Defendant TriZetto waited until December 9, 2025, before it began notifying the Class—a full sixty-eight days after the Data Breach was discovered.[8]

---

[6] *Id.*
[7] *Id.*
[8] *Data Breach Notice*, SOUTH CENTRAL PUBLIC HEALTH DISTRICT, https://www.classaction.org/media/trizetto-data-breach-attorney-letter-2025.pdf (last visited Dec. 18, 2025); *TriZetto Provider Solutions Notifies Healthcare Provider Clients About Data Breach*, THE HIPAA JOURNAL, https://www.hipaajournal.com/trizetto-provider-solutions-data-breach/ (last visited Dec. 18, 2025).

9

37.    Thus, Defendants kept the Class in the dark—thereby depriving the Class of the opportunity to try and mitigate their injuries in a timely manner.

38.    And when Defendant TriZetto did notify Plaintiff and the Class of the Data Breach, Defendant TriZetto acknowledged that the Data Breach created a present, continuing, and significant risk of suffering identity theft, warning Plaintiff and the Class:

      a.    "… beginning in November 2024, an unauthorized actor accessed certain historical eligibility transaction reports stored within their system."[9]

      b.    "These reports included protected health information (PHI) for individuals associated with our organization."[10]

39.    Defendants failed their duties when their inadequate security practices caused the Data Breach. In other words, Defendants' negligence is evidenced by their failure to prevent the Data Breach and stop cybercriminals from accessing the PII/PHI. And thus, Defendants caused widespread injury and monetary damages.

40.    Since the breach, Defendant TriZetto claims that it has offered to handle required breach notifications and regulatory reporting on behalf of affected clients and to cover the costs of credit monitoring and identity theft protection services.

41.    But such simple declarations are insufficient to ensure that Plaintiff's and Class Members' PII/PHI will be protected from additional exposure in a subsequent data breach.

42.    Further, the Notice of Data Breach shows that Defendant TriZetto cannot—or will not—determine the full scope of the Data Breach, as Defendant TriZetto has been unable to determine precisely what information was stolen and when.

---

[9] *Data Breach Notice*, SOUTH CENTRAL PUBLIC HEALTH DISTRICT,
https://www.classaction.org/media/trizetto-data-breach-attorney-letter-2025.pdf (last visited Dec. 18, 2025).
[10] *Id*.

43.     Defendant TriZetto has done little to remedy its Data Breach. True, Defendant TriZetto has offered some victims credit monitoring and identity related services. But upon information and belief, such services are wholly insufficient to compensate Plaintiff and Class Members for the injuries that Defendants inflicted upon them.

44.     Because of Defendants' Data Breach, the sensitive PII/PHI of Plaintiff and Class Members was placed into the hands of cybercriminals—inflicting numerous injuries and significant damages upon Plaintiff and Class Members.

**Plaintiff Stephen Rossi's Experiences and Injuries**

45.     Plaintiff Stephen Rossi is a current policyholder of Defendant BCBS.

46.      Thus, Defendants TriZetto and BCBS obtained and maintained Plaintiff's PII/PHI.

47.     As a result, Plaintiff was injured by Defendants' Data Breach.

48.     Plaintiff is very careful about the privacy and security of his PII/PHI. He does not knowingly transmit his PII/PHI over the internet in an unsafe manner. He is careful to store any documents containing his PII/PHI in a secure location.

49.     As a condition of Plaintiff's involvement with Defendant BCBS, Defendants obtained his PII/PHI.

50.     Plaintiff provided his PII/PHI to Defendants and trusted the companies would use reasonable measures to protect it according to Defendants' internal policies, as well as state and federal law. Defendants obtained and continued to maintain Plaintiff's PII/PHI and have a continuing legal duty and obligation to protect that PII/PHI from unauthorized access and disclosure.

51.     Through their Data Breach, Defendants compromised Plaintiff's PII/PHI.

52.     Plaintiff has spent—and will continue to spend—significant time and effort monitoring his accounts to protect himself from identity theft.

53.     Plaintiff fears for his personal health and financial security and worries about what information was exposed in the Data Breach.

54.     Because of Defendants' Data Breach, Plaintiff has suffered—and will continue to suffer from—anxiety, sleep disruption, stress, fear, and frustration. Such injuries go far beyond allegations of mere worry or inconvenience. Rather, Plaintiff's injuries are precisely the type of injuries that the law contemplates and addresses.

55.     Plaintiff suffered actual injury from the exposure and theft of his PII/PHI which violates his rights to privacy.

56.     Plaintiff suffered actual injury in the form of damages to and diminution in the value of his PII/PHI. After all, PII/PHI is a form of intangible property—property that Defendants were required to adequately protect.

57.     Plaintiff suffered imminent and impending injury arising from the substantially increased risk of fraud, misuse, and identity theft—all because Defendants' Data Breach placed Plaintiff's PII/PHI right in the hands of criminals.

58.     Because of the Data Breach, Plaintiff anticipates spending considerable amounts of time and money to try and mitigate his injuries.

59.     Today, Plaintiff has a continuing interest in ensuring that his PII/PHI—which, upon information and belief, remains backed up in Defendants' possession—is protected and safeguarded from additional breaches.

**Defendants Collected/Stored Class Members' PHI/PII and Financial Information**

60.     Defendant TriZetto is a provider of revenue management services to physicians, hospitals, and health systems, based in Earth City, Missouri.11

61.     Defendant BCBS is a nonprofit health insurer helping all Rhode Islanders live their healthiest lives, based in Providence, Rhode Island.12 On information and belief, Defendant BCBS is an enterprise client of TriZetto.

62.     As part of its business, Defendant BCBS collects and maintains the PII/PHI of thousands of their current and former employees and/or patients.

63.     As part of their businesses, Defendant BCBS then sends such PII/PHI to Defendant TriZetto.

64.     As part of its business, Defendant TriZetto collects and maintains the PII/PHI of the current and former employees and/or patients of Defendant BCBS.

65.     In collecting and maintaining the PII/PHI, Defendants agreed they would safeguard the data in accordance with its internal policies, state law, and federal law. After all, Plaintiff and Class Members themselves took reasonable steps to secure their PII/PHI.

66.     Under state and federal law, businesses like Defendants' have duties to protect employee and consumers' PII/PHI and to notify them about breaches.

67.      Defendant TriZetto recognizes these duties, advertising in its "Privacy Notice" that:

        a.      "Cognizant [TriZetto] implements appropriate security measures

---

11 *The TriZetto Provider Solutions Story*, TRIZETTO PROVIDER SOLUTIONS, https://www.trizettoprovider.com/who-we-are/our-story (last visited Dec. 18, 2025); *TriZetto Provider Solutions Notifies Healthcare Provider Clients About Data Breach*, THE HIPAA JOURNAL, https://www.hipaajournal.com/trizetto-provider-solutions-data-breach/ (last visited Dec. 18, 2025).
12 About Us, BLUE CROSS & BLUE SHIELD OF RHODE ISLAND, https://www.trizettoprovider.com/who-we-are/our-story (last visited Dec. 18, 2025)

designed to prevent unlawful or unauthorized processing of personal information and accidental loss of or damage to personal information."[13]

b.    "The data collected via our Sites is stored in a secure server with our ISP who will take periodic backups of such data."[14]

c.    "Your personal information will be retained only for so long as reasonably necessary for the purposes set out in this Privacy Notice in accordance with applicable laws, including for the purposes of satisfying any legal, regulatory, accounting or reporting requirements."[15]

### Defendants Had an Obligation to Protect the Stolen Information

68.    Defendants' failure to adequately secure Plaintiff's and Class Members' sensitive data breaches duties it owes Plaintiff and Class Members under statutory and common law. Under HIPAA, health insurance providers have an affirmative duty to keep patients' Protected Health Information private. As a covered entity, Defendants have a statutory duty under HIPAA and other federal and state statutes to safeguard Plaintiff's and Class Members' data. Moreover, Plaintiff and Class Members surrendered their highly sensitive personal data to Defendants under the implied condition that Defendants would keep it private and secure. Accordingly, Defendants also has an implied duty to safeguard their data, independent of any statute.

69.    Because Defendants are covered by HIPAA (45 C.F.R. § 160.102), it is required to comply with the HIPAA Privacy Rule, 45 C.F.R. Part 160 and Part 164, Subparts A and E ("Standards for Privacy of Individually Identifiable Health Information"), and Security Rule

---

[13] *Cognizant website Privacy Notice*, COGNIZANT, https://www.cognizant.com/us/en/privacynotice (last visited Dec. 18, 2025).
[14] *Id*.
[15] *Id*.

("Security Standards for the Protection of Electronic Protected Health Information"), 45 C.F.R. Part 160 and Part 164, Subparts A and C.

70.    HIPAA's Privacy Rule or Standards for Privacy of Individually Identifiable Health Information establishes national standards for protecting health information.

71.    HIPAA's Privacy Rule or Security Standards for the Protection of Electronic Protected Health Information establishes a national set of security standards for protecting health information that is kept or transferred in electronic form.

72.    HIPAA requires Defendants to "comply with the applicable standards, implementation specifications, and requirements" of HIPAA "with respect to electronically protected health information." 45 C.F.R. § 164.302.

73.    "Electronic protected health information" is "individually identifiable health information … that is (i) transmitted by electronic media; maintained in electronic media." 45 C.F.R. § 160.103.

74.    HIPAA's Security Rule requires Defendants to do the following:

    a.    Ensure the confidentiality, integrity, and availability of all electronically protected health information the covered entity or business associate creates, receives, maintains, or transmits;

    b.    Protect against any reasonably anticipated threats or hazards to the security or integrity of such information;

    c.    Protect against any reasonably anticipated uses or disclosures of such information that are not permitted; and

    d.    Ensure compliance by its workforce.

75.     HIPAA also requires Defendants to "review and modify the security measures implemented … as needed to continue provision of reasonable and appropriate protection of electronically protected health information" under 45 C.F.R. § 164.306(e), and to "[i]mplement technical policies and procedures for electronic information systems that maintain electronically protected health information to allow access only to those persons or software programs that have been granted access rights." 45 C.F.R. § 164.312(a)(1).

76.     Moreover, the HIPAA Breach Notification Rule, 45 C.F.R. §§ 164.400-414, requires Defendants to provide notice of the Data Breach to each affected individual "without unreasonable delay and in no case later than 60 days following the discovery of the breach."

77.     Defendants were also prohibited by the Federal Trade Commission Act (the "FTC Act") (15 U.S.C. § 45) from engaging in "unfair or deceptive acts or practices in or affecting commerce."16

78.     In addition to its obligations under federal and state laws, Defendants owed a duty to Plaintiff and Class Members to exercise reasonable care in obtaining, retaining, securing, safeguarding, deleting, and protecting the PHI/PII and financial information in Defendants' possession from being compromised, lost, stolen, accessed, and misused by unauthorized persons.

79.     Defendants owed a duty to Plaintiff and Class Members to provide reasonable security, including consistency with industry standards and requirements, and to ensure that its computer systems, networks, and protocols adequately protected the PHI/PII and financial information of Plaintiff and Class Members.

---

16 The Federal Trade Commission (the "FTC") has concluded that a company's failure to maintain reasonable and appropriate data security for consumers' sensitive personal information is an "unfair practice" in violation of the FTC Act. See, e.g., *FTC v. Wyndham Worldwide Corp.*, 799 F.3d 236 (3d Cir. 2015).

80.    Defendants owed a duty to Plaintiff and Class Members to design, maintain, and test its computer systems, servers, and networks to ensure that the PHI/PII and financial information was adequately secured and protected.

81.    Defendants owed a duty to Plaintiff and Class Members to create and implement reasonable data security practices and procedures to protect the PHI/PII and financial information in its possession, including not sharing information with other entities who maintained sub-standard data security systems.

82.    Defendants owed a duty to Plaintiff and Class Members to implement processes that would immediately detect a breach in its data security systems in a timely manner.

83.    Defendants owed a duty to Plaintiff and Class Members to act upon data security warnings and alerts in a timely fashion.

84.    Defendants owed a duty to Plaintiff and Class Members to disclose if its computer systems and data security practices were inadequate to safeguard individuals' PHI/PII and/or financial information from theft because such an inadequacy would be a material fact in the decision to entrust this PHI/PII and/or financial information to Defendant.

85.    Defendants owed a duty of care to Plaintiff and Class Members because they were foreseeable and probable victims of any inadequate data security practices.

86.    Defendants owed a duty to Plaintiff and Class Members to encrypt and/or more reliably encrypt Plaintiff's and Class Members' PHI/PII and financial information and monitor user behavior and activity in order to identify possible threats.

**Value of the Relevant Sensitive Information**

87.    PHI/PII and financial information are valuable commodities for which a "cyber black market" exists in which criminals openly post stolen payment card numbers, Social Security numbers, and other personal information on several underground internet websites.

88.    Numerous sources cite dark web pricing for stolen identity credentials; for example, personal information can be sold at a price ranging from $40 to $200, and bank details have a price range of $50 to $200[17]; Experian reports that a stolen credit or debit card number can sell for $5 to $110 on the dark web[18]; and other sources report that criminals can also purchase access to entire company data breaches from $999 to $4,995.[19]

89.    Identity thieves can use PHI/PII and financial information, such as that of Plaintiff and Class Members, which Defendants failed to keep secure, to perpetrate a variety of crimes that harm victims—for instance, identity thieves may commit various types of government fraud such as immigration fraud, obtaining a driver's license or identification card in the victim's name but with another's picture, using the victim's information to obtain government benefits, or filing a fraudulent tax return using the victim's information to obtain a fraudulent refund.

90.    There may be a time lag between when harm occurs versus when it is discovered, and also between when PHI/PII and/or financial information is stolen and when it is used:

---

[17] *Your personal data is for sale on the dark web. Here's how much it costs,* Digital Trends, Oct. 16, 2019, *available at*: https://www.digitaltrends.com/computing/personal-data-sold-on-the-dark-web-how-much-it-costs/ (last accessed January 10, 2024).
[18] *Here's How Much Your Personal Information Is Selling for on the Dark Web*, Experian, Dec. 6, 2017, *available at*: https://www.experian.com/blogs/ask-experian/heres-how-much-your-personal-information-is-selling-for-on-the-dark-web/ (last accessed January 10, 2024).
[19] *In the Dark*, VPNOverview, 2019, *available at*: https://vpnoverview.com/privacy/anonymous-browsing/in-the-dark/ (last accessed January 10, 2024).

according to the U.S. Government Accountability Office ("GAO"), which conducted a study regarding data breaches:

> [L]aw enforcement officials told us that in some cases, stolen data might be held for up to a year or more before being used to commit identity theft. Further, once stolen data have been sold or posted on the Web, fraudulent use of that information may continue for years. As a result, studies that attempt to measure the harm resulting from data breaches cannot necessarily rule out all future harm.[20]

91.     Here, Defendants knew of the importance of safeguarding PHI/PII and financial information and of the foreseeable consequences that would occur if Plaintiff's and Class Members' PHI/PII and financial information were stolen, including the significant costs that would be placed on Plaintiff and Class Members as a result of a breach of this magnitude.

92.     As detailed above, Defendants are sophisticated organizations with the resources to deploy robust cybersecurity protocols. It knew, or should have known, that the development and use of such protocols were necessary to fulfill its statutory and common law duties to Plaintiff and Class Members. Therefore, its failure to do so is intentional, willful, reckless and/or grossly negligent.

93.     Defendants disregarded the rights of Plaintiff and Class Members by, inter alia, (i) intentionally, willfully, recklessly, or negligently failing to take adequate and reasonable measures to ensure that its network servers were protected against unauthorized intrusions; (ii) failing to disclose that they did not have adequately robust security protocols and training practices in place to adequately safeguard Plaintiff's and Class Members' PHI/PII and financial information; (iii) failing to take standard and reasonably available steps to prevent the Data Breach; (iv) concealing the existence and extent of the Data Breach for an unreasonable

---

[20] *Report to Congressional Requesters*, GAO, at 29 (June 2007), *available at:* http://www.gao.gov/new.items/d07737.pdf (last accessed January 10, 2024).

duration of time; and (v) failing to provide Plaintiff and Class Members prompt and accurate notice of the Data Breach.

## CLAIMS FOR RELIEF

### COUNT ONE
### Negligence
### (On behalf of the Class)

94.     Plaintiff realleges and reincorporates every allegation set forth in the preceding paragraphs as though fully set forth herein.

95.     At all times herein relevant, Defendants owed Plaintiff and Class Members a duty of care, inter alia, to act with reasonable care to secure and safeguard their PHI/PII and financial information and to use commercially reasonable methods to do so. Defendants took on this obligation upon accepting and storing the PHI/PII and financial information of Plaintiff and Class Members in its computer systems and on its networks.

96.     Among these duties, Defendants were expected:

   e.     to exercise reasonable care in obtaining, retaining, securing, safeguarding, deleting, and protecting the PHI/PII and financial information in its possession;

   f.     to protect Plaintiff's and Class Members' PHI/PII and financial information using reasonable and adequate security procedures and systems that were/are compliant with industry-standard practices;

   g.     to implement processes to detect the Data Breach quickly and to timely act on warnings about data breaches; and

   h.     to promptly notify Plaintiff and Class Members of any data breach, security incident, or intrusion that affected or may have affected their

PHI/PII and financial information.

97.     Defendants knew that the PHI/PII and financial information was private and confidential and should be protected as private and confidential and, thus, Defendants owed a duty of care not to subject Plaintiff and Class Members to an unreasonable risk of harm because they were foreseeable and probable victims of any inadequate security practices.

98.     Defendants knew, or should have known, of the risks inherent in collecting and storing PHI/PII and financial information, the vulnerabilities of its data security systems, and the importance of adequate security.

99.     Defendants knew about numerous, well-publicized data breaches.

100.    Defendants knew, or should have known, that its data systems and networks did not adequately safeguard Plaintiff's and Class Members' PHI/PII and financial information.

101.    Only Defendants were in the position to ensure that its systems and protocols were sufficient to protect the PHI/PII and financial information that Plaintiff and Class Members had entrusted to it.

102.    Defendants breached its duties to Plaintiff and Class Members by failing to provide fair, reasonable, or adequate computer systems and data security practices to safeguard their PHI/PII and financial information.

103.    Because Defendants knew that a breach of its systems could damage thousands of individuals, including Plaintiff and Class Members, Defendants had a duty to adequately protect its data systems and the PHI/PII and financial information contained therein.

104.    Plaintiff's and Class Members' willingness to entrust Defendants with their PHI/PII was predicated on the understanding that Defendants would take adequate security precautions.

105.    Moreover, only Defendants had the ability to protect its systems and the PHI/PII and financial information is stored on them from attack. Thus, Defendants had a special relationship with Plaintiff and Class Members.

106.    Defendants also had independent duties under state and federal laws that required Defendants to reasonably safeguard Plaintiff's and Class Members' PHI/PII and financial information and promptly notify them about the Data Breach. These "independent duties" are untethered to any contract between Defendants, Plaintiff, and/or the remaining Class Members.

107.    Defendants breached its general duty of care to Plaintiff and Class Members in, but not necessarily limited to, the following ways:

    a.    by failing to provide fair, reasonable, or adequate computer systems and data security practices to safeguard the PHI/PII and financial information of Plaintiff and Class Members;

    b.    by failing to timely and accurately disclose that Plaintiff's and Class Members' PHI/PII and financial information had been improperly acquired or accessed;

    c.    by failing to adequately protect and safeguard the PHI/PII and financial information by knowingly disregarding standard information security principles, despite obvious risks, and by allowing unmonitored and unrestricted access to unsecured PHI/PII and financial information;

    d.    by failing to provide adequate supervision and oversight of the PHI/PII and financial information with which it was and is entrusted, in spite of the known risk and foreseeable likelihood of breach and misuse, which permitted an unknown third party to gather PHI/PII and financial

22

information of Plaintiff and Class Members, misuse the PHI/PII and intentionally disclose it to others without consent.

e.  by failing to adequately train its employees not to store PHI/PII and financial information longer than absolutely necessary;

f.  by failing to consistently enforce security policies aimed at protecting Plaintiff's and the Class Members' PHI/PII and financial information;

g.  by failing to implement processes to detect data breaches, security incidents, or intrusions quickly; and

h.  by failing to encrypt Plaintiff's and Class Members' PHI/PII and financial information and monitor user behavior and activity in order to identify possible threats.

108.    Defendants' willful failure to abide by these duties was wrongful, reckless, and grossly negligent in light of the foreseeable risks and known threats.

109.    As a proximate and foreseeable result of Defendants' grossly negligent conduct, Plaintiff and Class Members have suffered damages and are at imminent risk of additional harms and damages.

110.    The law further imposes an affirmative duty on Defendants to timely disclose the unauthorized access and theft of the PHI/PII and financial information to Plaintiff and Class Members so that they could and/or still can take appropriate measures to mitigate damages, protect against adverse consequences and thwart future misuse of their PHI/PII and financial information.

111.    Defendants breached its duty to notify Plaintiff and Class Members of the unauthorized access by waiting months after learning of the Data Breach to notify Plaintiff and

Class Members and then by failing and continuing to fail to provide Plaintiff and Class Members sufficient information regarding the breach.

112.    To date, Defendants have not provided sufficient information to Plaintiff and Class Members regarding the extent of the unauthorized access and continues to breach its disclosure obligations to Plaintiff and Class Members.

113.    Further, through its failure to provide timely and clear notification of the Data Breach to Plaintiff and Class Members, Defendants prevented Plaintiff and Class Members from taking meaningful, proactive steps to secure their PHI/PII and financial information.

114.    There is a close causal connection between Defendants' failure to implement security measures to protect the PHI/PII and financial information of Plaintiff and Class Members and the harm suffered, or risk of imminent harm suffered by Plaintiff and Class Members.

115.    Plaintiff's and Class Members' PHI/PII and financial information was accessed as the proximate result of Defendants' failure to exercise reasonable care in safeguarding such PHI/PII and financial information by adopting, implementing, and maintaining appropriate security measures.

116.    Defendants' wrongful actions, inactions, and omissions constituted (and continue to constitute) common law negligence.

117.    The damages Plaintiff and Class Members have suffered (as alleged above) and will suffer were and are the direct and proximate result of Defendants' grossly negligent conduct.

118.    As a direct and proximate result of Defendants' negligence and negligence per se, Plaintiff and Class Members have suffered and will suffer injury, including but not limited

to: (i) actual identity theft; (ii) the loss of the opportunity of how their PHI/PII and financial information is used; (iii) the compromise, publication, and/or theft of their PHI/PII and financial information; (iv) out-of-pocket expenses associated with the prevention, detection, and recovery from identity theft, tax fraud, and/or unauthorized use of their PHI/PII and financial information; (v) lost opportunity costs associated with effort expended and the loss of productivity addressing and attempting to mitigate the actual and future consequences of the Data Breach, including but not limited to, efforts spent researching how to prevent, detect, contest, and recover from embarrassment and identity theft; (vi) the continued risk to their PHI/PII and financial information, which may remain in Defendants' possession and is subject to further unauthorized disclosures so long as Defendants fail to undertake appropriate and adequate measures to protect Plaintiff's and Class Members' PHI/PII and financial information in its continued possession; and (vii) future costs in terms of time, effort, and money that will be expended to prevent, detect, contest, and repair the impact of the PHI/PII and financial information compromised as a result of the Data Breach for the remainder of the lives of Plaintiff and Class Members.

119.    As a direct and proximate result of Defendants' negligence and negligence per se, Plaintiff and Class Members have suffered and will continue to suffer other forms of injury and/or harm, including, but not limited to, anxiety, emotional distress, loss of privacy, and other economic and non-economic losses.

120.    Additionally, as a direct and proximate result of Defendants' negligence, Plaintiff and Class Members have suffered and will suffer the continued risks of exposure of their PHI/PII and financial information, which remain in Defendants' possession and are subject to

further unauthorized disclosures so long as Defendants fails to undertake appropriate and adequate measures to protect the PHI/PII and financial information in its continued possession.

**COUNT TWO**
**Breach of Implied Contract**
**(On behalf of the Class)**

121.    Plaintiff realleges and reincorporates every allegation set forth in the preceding paragraphs as though fully set forth herein.

122.    Through its course of conduct, Defendants, Plaintiff and Class Members entered into implied contracts for Defendants to implement data security adequate to safeguard and protect the privacy of Plaintiff's and Class Members' PHI/PII and financial information.

123.    Defendants required Plaintiff and Class Members to provide and entrust their PHI/PII and financial information as a condition of obtaining Defendants' services.

124.    Defendants solicited and invited Plaintiff and Class Members to provide their PHI/PII and financial information as part of Defendants' regular business practices.

125.    Plaintiff and Class Members accepted Defendants' offers and provided their PHI/PII and financial information to Defendant.

126.    As a condition of their relationship with Defendants, Plaintiff and Class Members provided and entrusted their PHI/PII and financial information to Defendant.

127.    In so doing, Plaintiff and Class Members entered into implied contracts with Defendants by which Defendants agreed to safeguard and protect such non-public information, to keep such information secure and confidential, and to timely and accurately notify Plaintiff and Class Members if their data had been breached and compromised or stolen.

128.    A meeting of the minds occurred when Plaintiff and Class Members agreed to, and did, provide their PHI/PII and financial information to Defendants, in exchange for, amongst other things, the protection of their PHI/PII and financial information.

129.    Plaintiff and Class Members fully performed their obligations under the implied contracts with Defendant.

130.    Defendants breached its implied contracts with Plaintiff and Class Members by failing to safeguard and protect their PHI/PII and financial information and by failing to provide timely and accurate notice to them that their PHI/PII and financial information was compromised as a result of the Data Breach.

131.    As a direct and proximate result of Defendants' above-described breach of implied contract, Plaintiff and Class Members have suffered (and will continue to suffer) (a) ongoing, imminent, and impending threat of identity theft crimes, fraud, and abuse, resulting in monetary loss and economic harm; (b) actual identity theft crimes, fraud, and abuse, resulting in monetary loss and economic harm; (c) loss of the confidentiality of the stolen confidential data; (d) the illegal sale of the compromised data on the dark web; (e) lost work time; and (f) other economic and non-economic harm.

**COUNT THREE**
**Invasion of Privacy**
**(On behalf of the Class)**

132.    Plaintiff realleges and reincorporates every allegation set forth in the preceding paragraphs as though fully set forth herein.

133.    Plaintiff and the Class had a legitimate expectation of privacy regarding their highly sensitive and confidential PII/PHI and were accordingly entitled to the protection of this information against disclosure to unauthorized third parties.

134.   Defendants owed a duty to their current and former patients, including Plaintiff and the Class, to keep this information confidential.

135.   The unauthorized acquisition (i.e., theft) by a third party of Plaintiff and Class Members' PII/PHI is highly offensive to a reasonable person.

136.   The intrusion was into a place or thing which was private and entitled to be private. Plaintiff and the Class disclosed their sensitive and confidential information to Defendants, but did so privately, with the intention that their information would be kept confidential and protected from unauthorized disclosure. Plaintiff and the Class were reasonable in their belief that such information would be kept private and would not be disclosed without their authorization.

137.   The Data Breach constitutes an intentional interference with Plaintiff's and the Class's interest in solitude or seclusion, either as to their person or as to their private affairs or concerns, of a kind that would be highly offensive to a reasonable person.

138.   Defendants acted with a knowing state of mind when they permitted the Data Breach because it knew its information security practices were inadequate.

139.   Defendants acted with a knowing state of mind when they failed to notify Plaintiff and the Class in a timely fashion about the Data Breach, thereby materially impairing their mitigation efforts.

140.   Acting with knowledge, Defendants had notice and knew that their inadequate cybersecurity practices would cause injury to Plaintiff and the Class.

141.   As a proximate result of Defendants' acts and omissions, the private and sensitive PII/PHI of Plaintiff and the Class were stolen by a third party and is now

available for disclosure and redisclosure without authorization, causing Plaintiff and the Class to suffer damages (as detailed *supra*).

142.    And, on information and belief, Plaintiff's PII/PHI has already been published—or will be published imminently—by cybercriminals on the Dark Web.

143.    Unless and until enjoined and restrained by order of this Court, Defendants' wrongful conduct will continue to cause great and irreparable injury to Plaintiff and the Class since their PII/PHI are still maintained by Defendants with their inadequate cybersecurity system and policies.

144.    Plaintiff and the Class have no adequate remedy at law for the injuries relating to Defendants' continued possession of their sensitive and confidential records. A judgment for monetary damages will not end Defendants' inability to safeguard the PII/PHI of Plaintiff and the Class.

145.    In addition to injunctive relief, Plaintiff, on behalf of himself and the other Class Members, also seeks compensatory damages for Defendants' invasion of privacy, which includes the value of the privacy interest invaded by Defendants, the costs of future monitoring of their credit history for identity theft and fraud, plus prejudgment interest and costs.

**COUNT FOUR**
**Unjust Enrichment**
**(On behalf of the Class)**

146.    Plaintiff realleges and reincorporates every allegation set forth in the preceding paragraphs as though fully set forth herein.

147.    By its wrongful acts and omissions described herein, Defendants have obtained a benefit by unduly taking advantage of Plaintiff and Class Members.

148.    Defendants, prior to and at the time Plaintiff and Class Members entrusted their PHI/PII and financial information to Defendants, caused Plaintiff and Class Members to reasonably believe that Defendants would keep such PHI/PII and financial information secure.

149.    Defendants were aware, or should have been aware, that reasonable patients and consumers would have wanted their PHI/PII and financial information kept secure and would not have contracted with Defendants, directly or indirectly, had they known that Defendants' information systems were sub-standard for that purpose.

150.    Defendants was also aware that, if the substandard condition of and vulnerabilities in its information systems were disclosed, it would negatively affect Plaintiff's and Class Members' decisions to seek services therefrom.

151.    Defendants failed to disclose facts pertaining to its substandard information systems, defects, and vulnerabilities therein before Plaintiff and Class Members made their decisions to make purchases, engage in commerce therewith, and seek services or information.

152.    Instead, Defendants suppressed and concealed such information. By concealing and suppressing that information, Defendants denied Plaintiff and Class Members the ability to make a rational and informed purchasing and servicing decision and took undue advantage of Plaintiff and Class Members.

153.    Defendants was unjustly enriched at the expense of Plaintiff and Class Members, as Defendants received profits, benefits, and compensation, in part, at the expense of Plaintiff and Class Members; however, Plaintiff and Class Members did not

receive the benefit of their bargain because they paid for products and or services that did not satisfy the purposes for which they bought/sought them.

154.    Since Defendants' profits, benefits, and other compensation were obtained improperly, Defendants are not legally or equitably entitled to retain any of the benefits, compensation or profits it realized from these transactions.

155.    Plaintiff and Class Members seek an Order of this Court requiring Defendants to refund, disgorge, and pay as restitution any profits, benefits and other compensation obtained by Defendants from its wrongful conduct and/or the establishment of a constructive trust from which Plaintiff and Class Members may seek restitution.

## **PRAYER FOR RELIEF**

**WHEREFORE,** Plaintiff, on behalf of themself and each member of the proposed Class, respectfully request that the Court enter judgment in their favor and for the following specific relief against Defendants as follows:

1.    That the Court declare, adjudge, and decree that this action is a proper class action and certify the proposed class under F.R.C.P. Rule 23 (b)(1), (b)(2), and/or (b)(3), including the appointment of Plaintiff's counsel as Class Counsel;

2.    For an award of damages, including actual, nominal, and consequential damages, as allowed by law in an amount to be determined;

3.    That the Court enjoin Defendants, ordering them to cease from unlawful activities;

4.    For equitable relief enjoining Defendants from engaging in the wrongful conduct

complained of herein pertaining to the misuse and/or disclosure of Plaintiff's and Class Members' PHI/PII, and from refusing to issue prompt, complete, and accurate disclosures to Plaintiff and Class Members;

5. For injunctive relief requested by Plaintiff, including but not limited to, injunctive and other equitable relief as is necessary to protect the interests of Plaintiff and Class Members, including but not limited to an Order:

a. prohibiting Defendants from engaging in the wrongful and unlawful acts described herein;

b. requiring Defendants to protect, including through encryption, all data collected through the course of business in accordance with all applicable regulations, industry standards, and federal, state, or local laws;

c. requiring Defendants to delete and purge the PHI/PII of Plaintiff and Class Members unless Defendants can provide to the Court reasonable justification for the retention and use of such information when weighed against the privacy interests of Plaintiff and Class Members;

d. requiring Defendants to implement and maintain a comprehensive Information Security Program designed to protect the confidentiality and integrity of Plaintiff's and Class Members' PHI/PII;

e. requiring Defendants to engage independent third-party security auditors and internal personnel to run automated security monitoring, simulated attacks, penetration tests, and audits on Defendants' systems periodically;

f. prohibiting Defendants from maintaining Plaintiff's and Class Members'

PHI/PII on a cloud-based database;

g.    requiring Defendants to segment data by creating firewalls and access controls so that, if one area of Defendants' network is compromised, hackers cannot gain access to other portions of Defendants' systems;

h.    requiring Defendants to conduct regular database scanning and securing checks;

i.    requiring Defendants to establish an information security training program that includes at least annual information security training for all employees, with additional training to be provided as appropriate based upon the employees' respective responsibilities with handling PHI/PII, as well as protecting the PHI/PII of Plaintiff and Class Members;

j.    requiring Defendants to implement a system of tests to assess its respective employees' knowledge of the education programs discussed in the preceding subparagraphs, as well as randomly and periodically testing employees' compliance with Defendants' policies, programs, and systems for protecting personal identifying information;

k.    requiring Defendants to implement, maintain, review, and revise as necessary a threat management program to monitor Defendants' networks for internal and external threats appropriately, and assess whether monitoring tools are properly configured, tested, and updated; and

l.    requiring Defendants to meaningfully educate all Class Members about the threats they face due to the loss of their confidential personal

identifying information to third parties, as well as the steps affected individuals must take to protect themselves.

6.      For prejudgment interest on all amounts awarded, at the prevailing legal rate;

7.      For an award of attorney's fees, costs, and litigation expenses, as allowed by law; and

8.      For all other Orders, findings, and determinations identified and sought in this Complaint.

## JURY DEMAND

Plaintiff, individually and on behalf of the Class, hereby demands a trial by jury for all issues triable by jury.

Dated: December 19, 2025                Respectfully submitted,

_/s/ Grayson Wells_____
Grayson Wells #73068 (MO)
Darrius D. Dixon*
**STRANCH, JENNINGS & GARVEY, PLLC**
223 Rosa L. Parks Avenue, Suite 200
Nashville, TN 37203
Tel: (615) 254-8801
gwells@stranchlaw.com
ddixon@stranchlaw.com

John F. Garvey, #35879 (MO)
Colleen Garvey, #72809 (MO)
**STRANCH, JENNINGS & GARVEY, PLLC**
701 Market Street, Suite 1510
St. Louis, MO 63101
Tel: (314) 390-6750
jgarvey@stranchlaw.com
cgarvey@stranchlaw.com

Kevin Laukaitis*
**LAUKAITIS LAW LLC**
954 Avenida Ponce De Leon
Suite 205, #10518
San Juan, PR 00907
Tel: (215) 789-4462

klaukaitis@laukaitislaw.com

***Pro Hac Vice* forthcoming**

***Attorneys for Plaintiff and the Class***